_____

No. 95-2482
_____

Thomas C. Hopper,                    *
                                     *
         Appellant,                  *
                                     *
    v.                               *
                                     *
Hallmark Cards, Inc.,                *
                                     *
         Appellee.                   *
                                  _____

No. 95-2866

                                  _____

Thomas C. Hopper,                    *
                                     *
         Appellee,                   *
                                     *  Appeals from the United States
    v.                               *  District Court for the Western
                                     *  District of Missouri.
Hallmark Cards, Inc.,                *
                                     *
         Appellant.                  *
                                  _____

No. 95-3031

                                  _____

Thomas C. Hopper,                    *
                                     *
         Appellant,                  *
                                     *
    v.                               *
                                     *
Hallmark Cards, Inc.,                *
                                     *
         Appellee.                   *
                                  _____

             Submitted:  March 14, 1996

                 Filed:  June 28, 1996
                                  _____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.
                                  _____

BEAM, Circuit Judge.

Following his discharge from employment, Thomas Hopper brought suit against Hallmark Cards, Inc. (Hallmark) for age and handicap discrimination and intentional infliction of emotional distress. Before trial, the district court[1] granted Hallmark's motion for summary judgment on the intentional infliction of emotional distress claim. At trial, it granted Hallmark's motions for judgment as a matter of law on the discrimination claims. Hopper appeals alleging the district court erred when it: (1) applied an incorrect standard to Hallmark's motion for judgment as a matter of law on the discrimination claims and refused to submit the discrimination claims to the jury; (2) found diverticulitis is not a medical handicap under Missouri law; (3) entered summary judgment on the emotional distress claim; (4) excluded "high potential" manager evidence and various other testimony; (5) denied discovery regarding other employees who allegedly also used drugs but were not discharged; and (6) awarded attorneys' fees against plaintiff's counsel on the emotional distress claim. Hallmark appeals the denial of its request for attorneys' fees on the discrimination claims. We affirm in part and reverse in part.

I.   **BACKGROUND**

In September 1967, Hopper began working for Hallmark as a production analyst in the Manufacturing Control Department. Over the next twenty-four years of service for Hallmark, Hopper held various positions, including several managerial positions in the Manufacturing Control Department. At the time of his discharge in March 1992, Hopper was employed in the Manufacturing Division of the Manufacturing, Scheduling and Control Department. He was forty-six years old at the time of his discharge.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

In April 1988, roughly four years before his discharge, Hopper was first diagnosed with diverticulitis by his physician, Dr. Keith Jantz. Diverticulitis is the acute form of diverticulosis. Although usually asymptomatic, diverticulosis manifests itself as small pockets on the lining of the colon, which can become painful if infected. In this aggravated state, the condition is referred to as diverticulitis. Dr. Jantz successfully treated the 1988 flare up with antibiotics. Dr. Jantz's notes do not reflect any further visits from Hopper for this condition until late 1991. In December 1991, Hopper's colon ruptured as a result of complications from diverticulitis. The rupture required Hopper to undergo surgery at which a colostomy was constructed.[2] The colostomy was later surgically reversed following a successful healing process.

Several years prior to his discharge, Hopper experienced marital difficulties. After his wife left him in the summer of 1990, Hopper began drinking alcohol heavily. The drinking resulted in three driving under the influence of alcohol (DUI) offenses: August 1991; October 1991; and April 1992. Along with the October 1991 DUI conviction, Hopper was convicted of attempted possession of cocaine and served time in jail. Hopper also testified to using cocaine on other occasions before and after that conviction. The April 1992 DUI resulted in the revocation of Hopper's probation on the earlier offense and another sentence of jail time. It is not clear who at Hallmark knew of Hopper's substance abuse and legal problems. Hopper testified, however, that his supervisors had become aware of his drug and alcohol use by the time of his exit interview, approximately one week after his discharge.

Deanna Bisel was Hopper's immediate supervisor at the time of his discharge. Bisel testified that she had seen a marked decrease

---

[2]A colostomy is the surgical creation of an opening between the colon and the surface of the body. Dorland's Illustrated Medical Dictionary 356 (28th ed. 1994).

in the quality of Hopper's work since mid-1990, around the time of his separation from his wife.[3]  Bisel documented these concerns and twice recommended Hopper's discharge to her superiors, stating his recent poor job performance and unacceptable work attendance as reasons for the recommendations.  Hallmark offered these same reasons for its eventual discharge of Hopper.

Although not privy to Bisel's confidential memos regarding his problems at work, Hopper received notice of Bisel's concerns regarding his performance and attendance no later than mid-1991, when he received an unsatisfactory midyear evaluation from her.  In that evaluation, Bisel stated that Hopper's job performance and attendance were unacceptable. Hopper disagreed that the evaluation accurately reflected his work performance but did not take his concerns to anyone else at Hallmark. Nevertheless, Hopper did not dispute the accuracy of Hallmark's attendance records and conceded that his attendance had at times been unsatisfactory according to the guidelines set for the Manufacturing, Scheduling and Control Department.  To counter this evidence, Hopper produced numerous performance reports in which he had received positive evaluations and evidence showing he had received a pay raise shortly before his mid-1991 evaluation.

At trial, there was conflicting testimony regarding whether a younger individual, Pam Oberdiek, replaced Hopper or whether she filled a newly created, independent position.  Hopper alleged that with few minor alterations, Oberdiek had taken over his job responsibilities.  Hallmark claimed that Hopper's previous position had been eliminated during a reorganization of the Manufacturing, Scheduling and Control Department. It further claimed that Hopper was not moved to the new position assumed by Oberdiek because of his poor performance and attendance ratings.

---

[3]This separation ended in divorce in June 1991.

Prior to trial, Hallmark moved for summary judgment. The district court granted the motion on the intentional infliction of emotional distress claim but denied the motion with respect to the discrimination claims. The district court stated that material factual disputes existed as to whether Hopper had alleged a medical handicap under Missouri law and as to Hallmark's proffered reason for terminating Hopper's employment. After the presentation of Hopper's evidence, the district court granted judgment as a matter of law on the handicap discrimination claim. Following the close of all the evidence, the district court granted judgment as a matter of law on the age discrimination claims, apparently finding Hopper had not successfully rebutted Hallmark's proffered reasons for his discharge.

## II.   DISCUSSION

### A.   Age Discrimination Claims

Hopper claimed Hallmark discharged him because of his age, in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. Both statutes prohibit employers from basing adverse employment decisions on age. The district court granted Hallmark's motion for judgment as a matter of law on these claims pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure.[4]  In

---

[4]That rule provides, in relevant part:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).

reviewing the grant of judgment as a matter of law, we apply the same standard as did the district court, i.e., we resolve all factual issues in favor of the nonmoving party. Hamaker v. Ivy, 51 F.3d 108, 110 (8th Cir. 1995). Accordingly, we must: (1) consider the evidence in the light most favorable to Hopper; (2) assume that all conflicts in the evidence were resolved in favor of Hopper; (3) assume as proved all facts that Hopper's evidence tended to prove; and (4) give Hopper the benefit of all favorable inferences that may reasonably be drawn from the facts proved. See First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co., 2 F.3d 801, 808 (8th Cir. 1993).

Although we must give Hopper the benefit of all reasonable inferences, we may not accord him "the benefit of unreasonable inferences." Marcoux v. Van Wyk, 572 F.2d 651, 653 (8th Cir. 1978). A reasonable inference is one "`which may be drawn from the evidence without resort to speculation.'" Caudill v. Farmland Indus., Inc., 919 F.2d 83, 86 (8th Cir. 1990) (quoting Hauser v. Equifax, Inc., 602 F.2d 811, 814 (8th Cir. 1979)). If the jury could reasonably reach a different conclusion based on the facts and the law, we must reverse the grant of judgment as a matter of law. Applying this standard, we find no error in the district court's grant of judgment as a matter of law to Hallmark on these claims.

To prove he was the subject of age discrimination, Hopper must first establish a prima facie case of age discrimination within the burden-shifting framework of McDonnell Douglas Corp. v. Green. 411 U.S. 792 (1973). A prima facie case of age discrimination requires a showing that Hopper: (1) is within the protected age group; (2) was performing his job at a level that met Hallmark's legitimate expectations; (3) was discharged; and (4) was replaced by a younger

worker.[5]  <u>Nelson v. Boatmen's Bancshares, Inc.</u>, 26 F.3d 796, 800 (8th Cir. 1994).  <u>See also</u>, <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 116 S. Ct. 1307, 1310 (1996).  For purposes of this appeal, we assume that Hopper established a prima facie case of age discrimination.

Once established, "the prima facie case raises a legal presumption of discrimination in the plaintiff's favor, requiring the defendant to produce legitimate, nondiscriminatory reasons for its actions." <u>Gaworski v. ITT Commercial Fin. Corp.</u>, 17 F.3d 1104, 1108 (8th Cir.), <u>cert. denied</u>, 115 S. Ct. 355 (1994).  If the defendant produces such legitimate reasons, the presumption, "having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture."  <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2749 (1993).  The burden then shifts back to the plaintiff to demonstrate that defendant's proffered reason is merely a pretext for age discrimination.  <u>Id.</u> at 2747-48; <u>Garner v. Arvin Indus. Inc.</u>, 77 F.3d 255, 257 (8th Cir. 1996).  <u>See also</u> <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771, 781 (8th Cir. 1995) (absent intentional discrimination by employers, federal courts are not to sit as "super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers").

On these facts, Hopper failed to adequately rebut Hallmark's proffered reasons for discharging him and, therefore, failed to demonstrate that Hallmark had a discriminatory reason for firing

---

[5]The phrasing of this fourth prong reflects the United States Supreme Court's recent modification.  <u>See</u> <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 116 S. Ct. 1307, 1310 (1996).  Many courts had previously required a plaintiff to show replacement by a worker outside the protected class, i.e., under the age of 40.  Such a requirement is no longer permissible.  As the <u>O'Connor</u> Court concluded, "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."  <u>Id.</u>

him.  Although some of the evidence presented showed an effort to discharge him, Hopper failed to show that the reason for that effort was his age.  At best, Hopper's allegations were evidence of:  (1) an antagonistic relationship with his immediate supervisor; (2) a high rate of missed work which aggravated Hopper's work relationships; and (3) substance abuse and corresponding legal difficulties which caused Hopper to miss more work.

Hopper presented statistical evidence to show that all managerial-level employees discharged within the eighteen-month period surrounding his discharge were over the age of forty.  Few of those discharged were members of Hopper's work unit; many were employed at different plants, in different states.  These statistics showed that managers over the age of forty were more likely to be discharged than those under forty, but failed to show that those discharged were similarly situated, qualified individuals who were singled out for adverse employment decisions based on their age.  Hopper admitted that the statistics were based on his own subjective interpretation of Hallmark's records and excluded other younger managers who had been discharged from various departments just prior to the date the data covered.  Furthermore, Hopper conceded that of all those employees over the age of forty under Bisel's supervision, he was the only one discharged despite being the youngest of those in the over-forty age group.  The statistical evidence, therefore, did not raise a reasonable inference of age discrimination.  Any other conclusion would require that we resort to speculation on Hopper's behalf, a tool unavailable to us on review of this judgment as a matter of law.

Assuming Hopper was not in contravention of company policy against excess absences, Hopper himself conceded that he believed his absentee rate was unsatisfactory at times.  This concession is particularly relevant considering Hopper's supervisory position

over other employees for whom he was expected to set an example. The evidence also showed that Hopper had been apprised of his unsatisfactory rating, was urged to improve upon it, but failed to do so.

Hopper's job performance evaluations and pay raise evidence account for the remainder of his circumstantial evidence. This evidence did little more than show satisfactory work performance, an element of the prima facie case of age discrimination which we have already assumed was established for purposes of this appeal. Although evidence of good performance can serve as evidence of pretext when an employee is discharged for poor performance, see, e.g., Hutson, 63 F.3d at 779, standing alone, it was insufficient to do so here.

The only reasonable inference to be drawn from these facts is that Hopper was fired because of his poor performance and attendance. Therefore, Hopper failed to rebut Hallmark's proffered reasons for his discharge. Hicks, 113 S. Ct. at 2747-48 (pretextual reason must be a pretext for age discrimination, or plaintiff has not carried burden of showing age discrimination). Because Hopper failed to offer sufficient evidence from which a jury could reasonably infer that he was fired because of his age, the district court correctly disposed of this claim on motion for judgment as a matter of law.

## B. Handicap Discrimination Claim

Hopper alleged that he was discharged because of his diverticulitis and further claimed diverticulitis was a handicap for purposes of Missouri law.[6] The district court granted

---

[6]This statement reflects Hopper's revised allegation of handicap discrimination. In his first filing with the Missouri Commission on Human Rights, Hopper alleged he was discharged due to a perceived handicap of alcohol and drug abuse. Hopper only later alleged diverticulitis as a handicap.

Hallmark's motion for judgment as a matter of law on this claim following the presentation of Hopper's evidence. As stated above, in reviewing the grant of judgment as a matter of law, we resolve all factual issues in favor of the nonmoving party. Hamaker v. Ivy, 51 F.3d at 110. Applying this standard, we find that Hopper failed to establish a prima facie case of handicap discrimination in that he failed to prove he was handicapped.

The Missouri Human Rights Act makes it unlawful to discharge an employee because of a handicap. Mo. Rev. Stat. § 213.055.1. A handicap is defined as "a physical or mental impairment which substantially limits one or more of a person's major life activities, a condition perceived as such, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performance of the job" in question. Mo. Rev. Stat. § 213.010(10). Hopper failed to present evidence from which a jury could reasonably find that his diverticulitis substantially limited his ability to engage in one of life's major activities--either before or after his operation.

Hallmark's employment records detailed Hopper's numerous absences from work, but rarely reflected health problems as the reasons for those absences. Hopper explained this by stating that he took vacation days instead of sick days to downplay his health problems. It is difficult to see how Hallmark could have discriminated against Hopper on the basis of a handicap, the severity of which was concealed from it. In any event, Hopper's own testimony showed that his absences were rarely attributable to his diverticulitis. In explaining the frequency of his Monday/Friday half-day vacation occurrences,[7] for instance, Hopper

---

[7]In addition to taking numerous full-day vacation days, Hopper took 16 half-days of vacation time in 1990 and 24 such days in 1991. Hopper admitted that many of these occurred on Mondays and Fridays.

did not claim that his sickness required time away from work.  Instead, he stated that he "enjoyed sometimes just splitting up a workday, being able to come in and work part of the day and then maybe play golf in the afternoon, maybe that type of thing, or going out and doing something else in the afternoon."  Transcript at 89.  These half-day outings were taken despite an attendance policy stating that requests for vacation segments of less than one week were to be confined to situations of special needs.

The medical testimony also established that Hopper was not handicapped within the meaning of Missouri law.  Dr. Jantz, Hopper's treating physician, testified that both <u>before</u> the colostomy surgery and <u>after</u> the reversal of that surgery, Hopper's diverticulitis did not limit his ability to engage in major life activities.  This testimony was further supported by Hopper's lack of doctor visits for treatment of diverticulitis between the date of the original diagnosis and the date his colon ruptured, despite calls and visits to the doctor concerning other medical problems, and by the lack of diverticulitis attacks following surgery.  In the face of this evidence, we cannot say the district court erred in granting judgment as a matter of law on Hopper's handicap discrimination claim.  <u>See Price v. S-B Power Tool</u>, 75 F.3d 362, 365 (8th Cir. 1996) (poor attendance, even if partially caused by handicap, is insufficient to suggest employee was terminated because of handicap).

## C.  Intentional Infliction of Emotional Distress Claim

Hopper next argues that the district court erred in granting Hallmark summary judgment on his emotional distress claim.  We review the entry of summary judgment de novo, giving the nonmoving party the benefit of every inference drawn from the evidence.  <u>Augustine v. GAF Corp.</u>, 971 F.2d 129, 131-32 (8th Cir. 1992).  Summary judgment is only proper when no genuine issue of material fact is present.  <u>Commercial Union Ins. Co. v. Schmidt</u>, 967 F.2d

270, 271 (8th Cir. 1992).  In an intentional infliction of emotional distress claim, however, the question of outrageousness of a defendant's conduct is initially for the judge and not the jury.  Frye v. CBS Inc., 671 S.W.2d 316, 319 (Mo. Ct. App. 1984).  Therefore, this claim is particularly amenable to disposition on summary judgment.

Hopper claims that by dismissing him shortly after his colon surgery, Hallmark intentionally inflicted emotional distress on him.  Hopper's evidence included Bisel's continued threatening of his employment despite her knowledge of his personal and health problems and her terminating his employment over the phone.  This  evidence amounts to little more than evidence of discharge and wholly fails to show outrageous conduct.  Liability on an intentional infliction of emotional distress claim has only been found where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id.  Undisputed evidence showed that Hallmark had offered Hopper counselling for his personal problems.  Even after discharging him, Hallmark paid Hopper through the end of April 1992 to ensure that his follow-up medical care and surgery were covered by its health benefits plan.  We cannot find such conduct to be "beyond all possible bounds of decency" and, therefore, find no error in the district court's grant of summary judgment on this claim.

### D.  Exclusion of "High Potential" Manager Evidence

Hopper next argues that the district court erred in excluding evidence regarding "high potential" managers.  Hallmark had a practice of selecting individuals as "high potential" managers, thereby designating those employees with the likely chance to advance in management.  Hopper argues that this evidence would have demonstrated Hallmark's preference for younger managers and proved

he was discharged because of his age.  Decisions to exclude or admit evidence are committed to the district court's discretion and will be affirmed absent a clear abuse of that discretion.  United States v. Mitchell, 31 F.3d 628, 631 (8th Cir. 1994).

The district court excluded the "high potential" manager evidence finding it was not probative of discriminatory intent.  Hopper did not allege that he was discharged because he was not selected as a "high potential" manager or allege any other causal link between the excluded evidence and his discharge.  Because discharge decisions at Hallmark were made according to individual performance, the requisite causal relationship between Hallmark's alleged discriminatory attitude and Hopper's termination was lacking.  See Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 252 (8th Cir. 1995).  The "high potential" manager evidence also failed to analyze the treatment of comparable employees.  The district court correctly found this evidence was irrelevant and alternatively, that the danger of unfair prejudice outweighed its probative value.  That decision was not an abuse of discretion.

**E.  Claims Relating to Hopper's Request for Reinstatement**

Hopper alleges that the district court erred in excluding the proffered testimony of his defense attorney and a corrections officer regarding sentencing options for his third DUI conviction.  He also alleges the district court erred in denying discovery into whether other Hallmark employees were abusing drugs but not discharged.  These claims relate to Hopper's claims for reinstatement and back pay in the event he was successful on his discrimination claims.  See, e.g., McKennon v. Nashville Banner Publishing Co., 115 S. Ct. 879, 886 (1995) (employee's subsequently discovered misconduct, which would have led to termination on legitimate grounds, limits damages and generally renders reinstatement inappropriate).  In light of our decision on the discrimination claims, we need not reach these arguments.

-13-

**F.  Attorneys' Fees**

Hopper alleges the district court also erred in ordering his counsel to pay $6,467.50 in attorneys' fees to Hallmark on the emotional distress claim.  The district court failed to explain the award, issuing only a one-sentence order granting the fees.  Although we recognize that attorneys' fees can be awarded directly against a party's counsel, such awards are normally reserved for those instances in which there is evidence of a willful abuse of the judicial process.  Jaquette v. Black Hawk County, Iowa, 710 F.2d 455, 462 (8th Cir. 1983).  There is nothing in this record to support a finding that the emotional distress claim was filed for anything less than a good faith belief in the legitimacy of the claim.  Accordingly, we reverse the district court's award.

Hallmark appeals the district court's denial of attorneys' fees on Hopper's discrimination claims.  We agree with the district court that an award of attorneys' fees was not warranted on those claims and affirm as to that issue.  We have considered the remainder of Hopper's arguments and find them to be without merit.

**III.  CONCLUSION**

Because we find no error in the district court's grant of judgment as a matter of law on the intentional discrimination claims or its grant of summary judgment on the emotional distress claim, we affirm as to those claims.  We reverse the award of attorneys' fees against Hopper's attorney and affirm the denial of additional fees on Hallmark's appeal.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.