# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-2160

———————

| | |
|---|---|
| Robert L. Miller, | * |
| | * |
|    Plaintiff - Appellant, | * |
| | * |
|     v. | * |
| | * |
| Citizens Security Group, Inc.; | * Appeal from the United States |
| Citizens Fund Insurance | * District Court for the |
| Company; Insurance Company of | * District of Minnesota. |
| Ohio; Citizens Security | * |
| Mutual Insurance Company; | * |
| Scott Broughton, and other | * |
| unknowns; Spencer Broughton, | * |
| | * |
|    Defendants - Appellees. | * |

———————

Submitted: December 9, 1996

Filed: June 24, 1997

———————

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

———————

JOHN R. GIBSON, Circuit Judge.

Robert L. Miller appeals from the district court's[1] grant of summary judgment in favor of Citizens Security Mutual Insurance Company on his age discrimination and wrongful discharge claims.[2]

———————

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[2]The district court also granted summary judgment in favor of Citizens Security Group, Inc., Citizens Fund Insurance Company, Insurance Company of Ohio, Scott Broughton, and Spencer Broughton on all of Miller's claims, and in favor of all defendants on Miller's good faith and fair dealing claim and ERISA claim. Miller has failed to discuss these parts of the district court's order, and the district court's decision as to these parties and claims is thus final.

Miller argues that the district court erred in granting summary judgment because there was evidence establishing genuine issues of material fact. We affirm.

Ray Cronk, Citizens' vice-president of claims, hired Miller as an outside insurance claims adjustor for Citizens, and Miller began working on July 10, 1989. Cronk also hired another outside adjustor, Bruce Langseth, who is significantly younger than Miller and began working for Citizens shortly after Miller.

Citizens employed outside adjustors and inside adjustors to handle customer claims for payment on losses insured by Citizens. Citizens initially assigned a claim to an inside adjustor. The inside adjustor would do all the work on a claim that could be done from inside Citizens' home office. If a claim required work that could not be performed from inside the home office, the inside adjustor would contact an outside adjustor. The outside adjustor would perform whatever work outside of the home office that was necessary to resolve the claim. Cronk supervised Citizens' inside and outside adjustors.

At first, Citizens failed to give Miller specific instructions as to how Citizens expected Miller to handle a claim. However, in January 1990, Cronk told Miller that Citizens expected him to meet two requirements on every claim he handled. First, Citizens expected Miller to contact the claimant within twenty-four hours after he received a claim from an inside adjustor. Second, Citizens expected Miller to give the inside adjustor a report on

every claim that was not fully resolved within ten days after it was given to him.  After this January 1990 meeting, Miller understood these two requirements and knew that Citizens expected him to meet these requirements on every claim he handled.

Miller, however, failed to comply with Citizens' contact and report requirements on some of the claims he handled after January 1990.  Several inside adjustors complained to Cronk about Miller's failure to comply with these requirements.  After receiving these complaints, Cronk fired Miller on March 31, 1992.  Miller was fifty-eight or fifty-nine years old when Cronk fired him.[3]

Like Miller, Langseth also failed to comply with Citizens' contact and report requirements on some of the claims he handled.  Cronk did not fire Langseth.

During Miller's employment with Citizens, Citizens gave him an employee handbook.  The handbook states on its first page that it "is not all inclusive, nor is it intended to be a contract."

Miller filed suit against Citizens claiming that Citizens violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (1994), by firing him because of his age.  He also claimed that Citizens' employee handbook created a contract under which Citizens could only fire him for cause and that Citizens wrongfully discharged him because it did not have cause.  After both sides conducted discovery, Citizens moved for summary judgment arguing that it fired Miller because of his poor job performance and that its employee handbook did not create a contract.

The district court held that Miller failed to establish a

---

[3]The record is not more specific as to Miller's age.

prima facie case of age discrimination because there was no evidence that Miller's job performance met Citizens' legitimate expectations. The court further held that the employee handbook was not a contract because it specifically stated that it was not intended to be a contract. Due to the lack of evidence showing that Miller's job performance was satisfactory and the absence of a contract to fire Miller only for cause, the district court granted summary judgment in favor of Citizens. Miller appeals.

## I.

Miller argues that the district court should not have granted summary judgment on his age discrimination claim because he established a prima facie case of age discrimination.

We review the district court's grant of summary judgment de novo and apply the same standards as the district court. See Conner v. Reckitt & Colman, Inc., 84 F.3d 1100, 1102 (8th Cir. 1996). Summary judgment is appropriate if there are no genuine issues of material fact and Citizens is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). We view all the evidence in the light most favorable to Miller, and give Miller the benefit of all reasonable inferences. See Johnson v. Group Health Plan, Inc., 994 F.2d 543, 545 (8th Cir. 1993). Miller can establish a genuine issue of material fact by presenting evidence that would permit a reasonable jury to return a verdict for him on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).

Miller relies on the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), framework to prove his claim of age discrimination. The only element of Miller's prima facie case of

age discrimination in dispute is the second, which the district court articulated as whether Miller was performing his job at a level that met Citizens' legitimate expectations when Citizens fired him. See Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 290 (8th Cir. 1982), cert. denied, 459 U.S. 1205 (1983); see also O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307, 1310 (1996).

## A.

Miller argues that he was qualified for the position of outside adjuster. He first contends that the district court made an erroneous articulation of the qualification element of the prima facie case when it required him to show that he was "performing his job at a level which met [Citizens'] legitimate expectations." He cites Davenport v. Riverview Gardens School District, 30 F.3d 940 (8th Cir. 1994), and Hase v. Missouri Division of Employment Security, 972 F.2d 893 (8th Cir. 1992), cert. denied, 508 U.S. 906 (1993), which simply expressed the element as a showing that the employee was "qualified for his position."

The district court did not err in articulating this element as performance of the job at a level that met the employer's legitimate expectations. McDonnell Douglas makes plain that the facts in Title VII cases will vary, and that the prima facie proof required is "not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n.13. In Halsell the plaintiff brought an ADEA claim based on his discharge, and we held, relying on Loeb v. Textron, Inc., 600 F.2d 1003, 1013-14 (1st Cir. 1979), another age discrimination case arising from a discharge, that a correct statement of the McDonnell Douglas prima facie elements adapted to those circumstances was that the employee

5

"was performing his job at a level that met his employer's legitimate expectations." Halsell, 683 F.2d at 290. We have reiterated this standard on numerous occasions. See Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382-83 (8th Cir. 1994); Miner v. Bi-State Dev. Agency, 943 F.2d 912, 913 (8th Cir. 1991); Crimm v. Missouri Pac. R.R., 750 F.2d 703, 711 (8th Cir. 1984).

**B.**

We have affirmed summary judgments on the grounds that a plaintiff has failed to present a prima facie case, which was the holding of the district court in this case. See Lang v. Star Herald, 107 F.3d 1308, 1312-13 (8th Cir. 1997); Harlston, 37 F.3d at 383. Miller argues that he presented sufficient evidence to establish the second element of his prima facie case.

None of Miller's evidence creates a genuine issue of material fact as to whether he was meeting the legitimate expectations of Citizens when Citizens fired him. Miller stated in his affidavit that his job performance did meet Citizens' expectations. A conclusory statement in an affidavit, however, cannot create a genuine issue of material fact which precludes summary judgment. See Jackson v. Anchor Packing Co., 994 F.2d 1295, 1303-04 (8th Cir. 1993).

Miller also points to three evaluations of his work at Citizens which show that he was performing satisfactorily in his job. These evaluations date from April 18, 1990, July 26, 1990, and January 16, 1991. We conclude that these evaluations are not evidence that Miller was meeting Citizens' legitimate expectations when Citizens fired him because they are too far removed in time from the date of Miller's discharge, March 31, 1992. Miller has

6

not presented any evidence that he was meeting Citizens' legitimate expectations at any time during the year before he was fired.

Miller states that Citizens only told him once that his job performance was unsatisfactory.  Miller argues that this is evidence that he was meeting Citizens' legitimate expectations.  We reject Miller's argument; the fact that Citizens only told him once that his job performance was unsatisfactory is not evidence that his job performance was satisfactory.[4]

We conclude that Miller failed to establish the second element of his prima facie case, and thereby failed to make a prima facie case.  Except for his own conclusory statement, Miller has presented no evidence that his job performance met Citizens' legitimate expectations at the time of his discharge.  The district court did not err in so holding.  See Harlston, 37 F.3d at 382-83.

## II.

If the case proceeds beyond the prima facie case to articulation of a legitimate nondiscriminatory reason, and possibly thence to pretext, we reach issues that this Court en banc has recently discussed in detail in Ryther v. KARE 11, 108 F.3d 832 (8th Cir. 1997) (en banc), petition for cert. filed, 65 U.S.L.W. 3694 (U.S. April 4, 1997) (No. 96-1571).  We stated that for a plaintiff to succeed, simply proving pretext is not necessarily

---

[4]Miller asserts that Cronk did not mention his job performance when Cronk fired him.  Instead, Cronk merely stated that Miller was "not a fit" with Citizens.  Miller's citation to the record does not support his assertions.  Appellant's Brief at 13, 20-21, 26 (citing Appellant's Appendix at 100377-83, 100470-71).  We decline to search the record for error and thus refuse to consider these two assertions.  See Farmland Indus. v. Frazier-Parrott Commodities, Inc., 871 F.2d 1402, 1407 (8th Cir. 1989).

enough if it is inconsistent with a reasonable inference of age discrimination. Id. at 837. We cited with approval Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328 (8th Cir. 1996), which held that to survive summary judgment a plaintiff must present evidence of pretext and evidence from which a reasonable jury could infer that he was fired because of his age. Id. at 1336-37.

The district court in its order stated that Miller's attack on the honesty of the explanation "imperceptibly" shades into the issue of pretext, and this makes it desirable that we briefly discuss the issues of pretext raised by Miller. We only briefly treat the arguments raised, as it is evident not only that Miller failed to establish pretext, but his argument, other than a flat general statement, simply fails to deal with his ultimate burden of persuading the court that he has been the victim of intentional discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 519 (1993); Ryther, 108 F.3d at 837-38; Rothmeier, 85 F.3d at 1337.

For evidence of pretext, Miller points to his statement that Citizens only told him on one occasion that his job performance was unsatisfactory. This statement, however, does not prove that Citizens' reason for firing Miller, unsatisfactory job performance, is a pretext for age discrimination. On the contrary, it reinforces Citizens' explanation because it is evidence that Citizens considered Miller's job performance to be unsatisfactory.

Additionally, there is uncontradicted evidence in the record that Citizens told Miller four months and two and a half months before his discharge that there were problems with his job performance. Miller admits that four months before his discharge, Cronk sent Miller a memo stating that there was "a very serious problem with your work," and that if Miller's job performance did

8

not improve drastically, Citizens and Miller "might be parting company!!" Miller also does not deny that Cronk wrote an evaluation of Miller's job performance which mentioned several problems with Miller's work, that Cronk discussed the evaluation with Miller, and that Miller signed the evaluation two and a half months before Citizens fired him. The evaluation and the memo show that Citizens told Miller twice within four months of his discharge that there were problems with his job performance.

Miller argues that Cronk failed to identify during his deposition specific instances of Miller's poor job performance and that this is evidence of pretext. Cronk gave his deposition almost three years after he fired Miller from Citizens. During that deposition Cronk stated several times that he was aware of specific instances of Miller's poor job performance when he supervised and fired Miller, but that he could not presently recall the details of those incidents. Miller does not dispute that Cronk was aware of specific instances of Miller's poor job performance when he supervised and later fired Miller; therefore, Cronk's inability to remember the details of those same incidents at his deposition is not sufficient to create a material issue of fact. Cf. Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1317-18 (8th Cir. 1996) (citing Gill v. Reorganized Sch. Dist. R-6, 32 F.3d 376, 379 (8th Cir. 1994)).

Miller argues that his job performance was as good as Langseth's, and yet Citizens fired him, but not the younger Langseth. Miller attempts to show that his job performance was equal to or better than Langseth's by submitting the affidavit of Kathryn Smith. Smith reviewed a small fraction of Citizens' claim files to determine how often Miller and Langseth complied with Citizens' notice and report requirements in those files. The problem with Smith's review is that there is no indication that the

9

files she reviewed are representative of Miller's and Langseth's overall job performance at Citizens. For example, to evaluate Miller's job performance, Smith only reviewed the files Miller had in his possession. There is no evidence, however, that these files are representative of Miller's overall job performance at Citizens. Thus, Miller failed to prove that his job performance was similar to Langseth's, and therefore, no reasonable fact finder could draw an inference of discrimination from Citizens' firing of Miller and continued employment of Langseth. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972-73 (8th Cir. 1994).

Finally, Miller argues that he received less extensive training than Langseth and that this is evidence of pretext. Miller states in his affidavit that after his January 1990 meeting with Cronk, he understood Citizens' contact and report requirements and that Citizens expected him to comply with those requirements on every file he handled. Miller also admits in his affidavit that he failed to comply with those requirements after January 1990. Cronk states in his affidavit and deposition that Miller's continued failure to comply with Citizens' contact and report requirements after January 1990 caused him to fire Miller. Thus, the undisputed record shows that a lack of training had nothing to do with Citizens' firing of Miller.

We think it abundantly clear that the district court did not err in entering summary judgment on behalf of Citizens. For, contrary to what we have held above, even if we concede that Miller has presented a prima facie case, and if we further concede that Miller's arguments demonstrate pretext, there simply is no showing in the record before us that Miller has met his ultimate burden of establishing that age discrimination was the cause for his discharge. Our conclusions are further reinforced by Cronk's hiring of Miller less than three years before his firing of Miller.

As we have stated in similar cases, it is simply incredible, in light of the weakness of Miller's evidence otherwise, that Cronk, who hired Miller when Miller was age fifty-five or fifty-six, had suddenly developed an aversion to older people when he fired Miller less than three years later. See Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 175 (8th Cir. 1992). Citizens is entitled to summary judgment on Miller's age discrimination claim. See Hopper v. Hallmark Cards, Inc., 87 F.3d 983, 988-89 (8th Cir. 1996).

## III.

Miller argues that a provision in Citizens' employee handbook created a contract that obligated Citizens to fire him only if Citizens had cause to do so. Miller contends that Citizens did not have cause to fire him and therefore breached the contract created by the handbook.

Both parties agree that Minnesota law governs this claim. Under Minnesota law, a provision in an employee handbook can be a binding contract between an employer and his employees if it meets certain requirements. See Pine River State Bank v. Mettille, 333 N.W.2d 622 (Minn. 1983). Citizens' employee handbook, however, states on its first page that it is not intended to be a contract.

The Minnesota Supreme Court has not ruled on the effect of such a disclaimer in an employee handbook. We must, therefore, predict the result the Minnesota Supreme Court would reach on this issue. See B.B. v. Continental Ins. Co., 8 F.3d 1288, 1291 (8th Cir. 1993). We may look to the decisions of the Minnesota Supreme Court and the Minnesota Court of Appeals for guidance. See id.

The Minnesota Supreme Court has stated that a disclaimer

11

stating that an employee handbook "shall not be construed to form a contract" prevents an employee from claiming contractual rights under that handbook.  Feges v. Perkins Restaurants, Inc., 483 N.W.2d 701, 705, 708 (Minn. 1992).  While the court's statement in Feges is dicta, we conclude that it indicates the position the court would take on this issue.  Our conclusion is reinforced by the holdings of two decisions of the Minnesota Court of Appeals.  See Michaelson v. Minnesota Mining & Mfg. Co., 474 N.W.2d 174, 180 (Minn. Ct. App. 1991), aff'd mem., 479 N.W.2d 58 (Minn. 1992); Audette v. Northeast State Bank, 436 N.W.2d 125, 127 (Minn. Ct. App. 1989).  The Minnesota Court of Appeals held in Michaelson and Audette that a disclaimer in an employee handbook prevents an employee from claiming contractual rights under that handbook.  Based on Feges, Michaelson, and Audette, we hold that the disclaimer in Citizens' employee handbook prevents Miller from claiming contractual rights under Citizens' handbook.

In so holding, we reject the district court's interpretation of Minnesota law in O'Brien v. A.B.P. Midwest, Inc., 814 F. Supp. 766, 776 (D. Minn. 1992).  We conclude that the Minnesota Supreme Court would hold that a disclaimer prevents an employee from claiming contractual rights under an employee handbook even when other provisions of the handbook are specific and unequivocal.  See Feges, 483 N.W.2d at 705, 708 (stating in dicta that a disclaimer in an employee handbook would prevent an employee from claiming contractual rights under another handbook provision which was specific and unequivocal).[5]

---

[5]Our recent decision in Patterson v. Tenet Healthcare, Inc., No. 96-2587 (8th Cir. May 12, 1997), is not to the contrary. Patterson recognized that employee handbooks are not contracts under Missouri law, but that an acknowledgment form in the handbook that Patterson signed contained an agreement to arbitrate which was an enforceable contract under Missouri law.  Slip op. at 3-5.

Accordingly, we affirm the district court's grant of summary judgment in favor of Citizens.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.