**L.C. BLACK, Plaintiff,**

v.

**WAGNER BRAKE SUBSIDIARY, Cooper Industries, Inc., Defendant.**

**No. 4:96 CV 1315 DDN.**

United States District Court,
E.D. Missouri,
Eastern Division.

Feb. 17, 1998.

Cindy S. Kaplan, Senniger and Powers, St. Louis, MO, Dana M. Walker, Associate, Banks and Associates, St. Louis, MO, for Plaintiff.

Robert W. Stewart, Partner, McMahon and Berger, St. Louis, MO, for Defendant.

## MEMORANDUM

NOCE, United States Magistrate Judge.

This action is before the Court upon the motion of defendant Wagner Brake Subsidiary of Cooper Industries, Inc., for summary judgment (Doc. No. 39). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

By his third amended complaint, plaintiff L.C. Black seeks relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Missouri Human Rights Act, Mo.Rev.Stat. § 213.111 et seq., for alleged discrimination in his employment with defendant on account of his African American race. He alleges that he was employed by defendant from February 1979 until he was disciplined on April 12 and discharged on May 10, 1996. Plaintiff alleges that on April 12, 1996, he was suspended for "calling in, requesting that same day off and taking it off, while [defendant] allow[ed] white employees to call in, request the same day off and take the day off with no repercussions." Third Amended Complaint, filed April 1, 1997, at 2. Plaintiff also alleges that defendant terminated him on May 10, 1996, for conduct for which white employees were not terminated. *Id.* Plaintiff seeks compensatory and punitive damages, equitable relief, and attorney's fees.

Defendant seeks summary judgment on the ground that race played no part in plaintiff's discipline and discharge from employment; rather, plaintiff was discharged pursuant to defendant's nondiscriminatory employee attendance policy.

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-movant, reveals that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Plaintiff's proffer of admissible evidence must be credited and all justifiable inferences from it are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In response to a motion for summary judgment, the party resisting the motion may not remain mute, hoping to discredit the movant's evidence at trial. Rather the non-movant must proffer admissible evidence which is sufficient to show that there is a genuine issue as to one or more material facts for determination at trial. *Barge v. Anheuser-Busch, Inc.,* 87 F.3d 256, 260 (8th Cir.1996) *Rothmeier v.*

*Investment Advisers, Inc.,* 85 F.3d 1328, 1337 (8th Cir.1996).

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race. 42 U.S.C. § 2000e–2(a). The order and allocation of proof at trial is governed by the three-stage burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 526, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Ryther v. KARE 11,* 108 F.3d 832, 836 (8th Cir.) (en banc), *cert. denied,* — U.S. —, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997); *Jetton v. McDonnell Douglas Corp.,* 121 F.3d 423, 425 (8th Cir.1997). The Missouri Human Rights Act also prohibits racial discrimination in employment and is governed by the same principles of law. *Rinehart v. City of Independence, Missouri,* 35 F.3d 1263, 1265 n. 1 (8th Cir.1994), *cert. denied,* 514 U.S. 1096, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995).

Initially, the plaintiff must establish a prima facie case of discrimination; if done, the burden shifts to the defendant employer, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action, in order to rebut a presumption of discrimination. If the defendant sustains this burden of producing evidence of a nondiscriminatory reason for its actions, the presumption drops from the case and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, *i.e.,* plaintiff may prove that the proffered reason was a pretext for unlawful discrimination. *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1309 (8th Cir.1994). The plaintiff's evidence that the defendant's proffered reason for its action is pretextual may or may not be legally sufficient and consistent with unlawful discrimination. *Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1106 (8th Cir.1998); *Ryther,* 108 F.3d at 837–38 n. 4. At all times, the plaintiff retains the ultimate burden of persuasion to show that the adverse employment action was a result of intentional, unlawful discrimination. *Kobrin v. University of Minnesota,* 121 F.3d 408, 413–14 (8th Cir. 1997).

## FACTUAL RECORD

In support of its motion, defendant has submitted the sworn, written affidavit of Timothy F. Dan, defendant's Human Resources Manager and several documentary exhibits. Plaintiff has opposed the motion with his own sworn, written affidavit. The material facts are without substantial dispute.

Plaintiff was employed by defendant from February 1979 to May 1996. *See* Third Amended Complaint, filed April 1, 1997, at ¶ 4; Answer to Third Amended Complaint, filed April 4, 1997, at ¶ 4. Plaintiff worked in defendant's foundry and was a member of the collective bargaining unit represented by Teamsters Local Union 688 (Union). The collective bargaining agreement under which plaintiff worked was in effect from December 17, 1995, and remains in effect through December 12, 1998. Dan Affidavit, filed June 5, 1997, at ¶ 4.

Defendant has maintained an employee attendance policy since approximately 1983. This attendance policy was revised in November 1986 and thereafter. Effective August 1, 1994, defendant promulgated a written attendance policy. Defendant's Motion Exhibit 2. Defendant's attendance policy is described as

a modified no fault policy which assigns points to employees according to a schedule. Employees are charged two (2) points for missed work days and one (1) point for tardiness/leave early. Two (2) points are deducted from an employee's record if he/she works a thirty (30) calendar day period without an offense.

7. According to the Policy, certain approved absences and/or leaves do not result in the assessment of points, e.g. Article XVIII, Sec. 2 Approved Leaves of Absence, Article XII Vacations, Article XI Holidays, etc. . . .

8. Since at least September 1, 1993, Defendant has imposed discipline against employees according to the following Policy schedule:

| Level | Points | Type of Discipline |
|-------|--------|--------------------|
| A | 5 | First Warning |
| B | 10 | Second Warning |
| C | 15 | Three (3) days suspension |
| D | 15 | Automatic termination if 15 points are reached again within a 12 month period following a Level C—suspension. |

Dan Affidavit, at ¶¶ 5–7; Def. Motion Exh. 2.

Between January 1994 and May 1996, plaintiff applied for and received ten leaves of absence for medical and other reasons. Plaintiff was disciplined or suspended from work at least 60 times for attendance policy violations. Def. Motion Exh. 3. Since November 14, 1986, plaintiff has received 3 Level A warnings, 21 Level B warnings, 5 Level C suspensions and the final Level D discharge. *Id.;* Dan Affidavit at ¶ 10.

Prior to 1996, the application of the attendance policy had been an issue at defendant's workplace. Employees claimed the right to call in less than 24 hours in advance of being absent from work and request a day of vacation to cover the absence and to avoid the assessment of points. And, in fact, before 1996 on rare occasions, an employee was allowed to avoid the assessment of points, after consideration of a number of factors, including the operating needs of the employee's department and the attendance and disciplinary record of the subject employee. Dan Affidavit at ¶ 16.

In late 1995 and early 1996, defendant and the Union negotiated a new collective bargaining agreement, which was ultimately ratified on January 20, 1996. *See* Def. Motion Exh. 1; Dan Affidavit at ¶¶ 16–17. This new collective bargaining agreement provided in relevant part for employees taking vacation time as follows:

*ARTICLE XII*

*VACATIONS*

\* \* \* \* \* \*

*Section 4.*

Employees who are eligible for more than two (2) weeks vacation shall be allowed to take vacation in excess of two weeks, one or more days at a time, provided seven (7) days advance notice is given. All vacation requests less than a week must be approved by supervision, and will be granted on a first-come/first serve basis as production needs dictate, should more than one employee in the same department request vacation the same day.

Def. Motion Exh. 1 at 17.

On February 6 and 7, 1996, the defendant's Employee Relations department trained supervisors and management personnel in the new labor agreement. Supervisors and management personnel were told to advise their subordinate employees that employees would no longer be allowed to call in less than 24 hours in advance to request vacation time to cover an expected absence and to avoid the assessment of points. They were told that the collective bargaining agreement required the seven days notice. However, with more than 24 hours notice, depending on the defendant's operating needs, the reasons for the absence, and the employee's attendance and disciplinary record, such vacation time could be granted. Dan Affidavit at ¶ 18.

As of January 1, 1996, plaintiff carried a balance of 12 points under the defendant's attendance policy. Def. Motion Exh. 4; Black Affidavit at ¶ 9. In February 1996 his point balance remained at 12. Black Affidavit at ¶ 10. On March 1, 1996, his point balance was 11. Black Affidavit at ¶ 13. Plaintiff was absent on March 15, 1996, increasing his point balance to 13 points. Plaintiff was absent on April 12 and April 19, 1996, causing an increase of his points to 15 and 17, respectively. Black Affidavit at ¶ 14. Accordingly, plaintiff received a Level C three-day disciplinary suspension, which he served on April 23, 24 and 25, 1996. Def. Motion Exh. 3; Black Affidavit at ¶ 15.

Plaintiff was absent on May 10, 1996. Dan Affidavit at ¶ 11; Black Affidavit at ¶¶ 16–18. According to defendant, this absence caused the assessment of plaintiff's 19th point. Thus, plaintiff reached or exceeded 15 points twice within a 12 month period. For this reason, pursuant to the defendant's attendance policy, plaintiff was discharged. Defendant asserts that the decision to terminate plaintiff was not motivated by plaintiff's race; instead the decision to terminate him was based upon his bad attendance record and

the defendant's attendance policy. Dan Affidavit at ¶¶ 11, 12.

About the events of May 10, 1996, plaintiff would testify that he was scheduled to begin work at 3:00 p.m. that day. At approximately 2:20 p.m. that day he telephoned his supervisor and asked for a vacation day. Plaintiff would testify that his supervisor granted the request. Black Affidavit at ¶¶ 16–18. According to defendant's memorandum filed in support of the motion for summary judgment, plaintiff's request for a vacation day was denied by his supervisor. Def. Suggestions, filed June 5, 1997, at 4.[1] Plaintiff returned to work on May 13. At that time he asked for a vacation request form to fill out, which had been the usual practice. However, his supervisor told him he would have to see the Human Resources Manager, Timothy Dan. Plaintiff's vacation request form was not approved and he was discharged on May 17, 1996. Black Affidavit at ¶¶ 16–22.

Soon thereafter, plaintiff grieved his discharge under the collective bargaining agreement. Article IV of this collective bargaining agreement prohibits discrimination on the basis of race. Dan Affidavit at ¶ 13. Plaintiff's collective bargaining representative, Teamsters Local Union No. 688, processed his grievance through final and binding arbitration. The arbitration hearing was conducted on December 9, 1996, before Arbitrator Mark W. Suardi. On February 14, 1997, Mr. Suardi issued his Award denying plaintiff's grievances, finding that the company's application of the attendance policy in plaintiff's case was reasonable and that plaintiff had not been suspended or terminated discriminatorily. Def. Motion Exh. 5 at 16; Dan Affidavit at ¶ 14.

In answers to interrogatories, plaintiff states that five other employees were allowed to call in less than twenty-four hours in advance and use vacation time to prevent the assessment of points. See Answers to Interrogatories 8, 11, 12; Dan Affidavit at ¶ 19.

These employees were LaVerne Williams (African American); Willie Rainey (African American); James Bray (White); Fred Gordon (African American); and Mark Canapori (white). However, after February 1996, no employee of defendant, including Williams, Rainey, Bray, Gordon and Canapori, had been allowed to request vacation time less than twenty-four hours in advance to avoid the assessment of points. Dan Affidavit at ¶ 20. Similarly, the grievance arbitrator also found that "the record [does not] disclose any exceptions to the articulated '24 hour rule' *after* its implementation in December [1995] or January [1996]." Def. Motion Exh. 5 at 15 (emphasis added).

### DISCUSSION

In support of its motion for summary judgment, defendant argues that plaintiff has failed to show sufficient evidence of a prima facie case of discrimination based on race. To establish a prima facie case of racial discrimination, under the allegations made by plaintiff in this case, he must show (1) that he is a member of a protected class; (2) that in April 1996 plaintiff was disciplined or in May 1996 he was discharged from employment; (3) that when he was disciplined or when he was discharged, plaintiff was performing his job as defendant reasonably and legitimately expected; and (4) that there were factual circumstances which give rise to an inference that plaintiff's race was a motivating factor in either his April discipline or the May discharge. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *Miller v. Citizens Security Group, Inc.*, 116 F.3d 343, 345 (8th Cir.1997); *Berg v. Bruce*, 112 F.3d 322, 327 (8th Cir.1997); *Lang v. Star Herald*, 107 F.3d 1308, 1311 (8th Cir.1997); *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 258 (8th Cir.1996); *Wilson*

1. The statement that plaintiff's request for a vacation day on May 10, 1996, was denied by his supervisor is stated only in defendant's memorandum of law and is not proffered in an affidavit or other appropriate form of evidentiary proffer. Therefore, it cannot be considered in support of the motion for summary judgment.

See F.R.Civ.P. 56(c), (e). However, in the related labor grievance arbitration, the arbitrator resolved this disputed issue of fact and found that "Supervisor Tabor told the Grievant he (Grievant) could not have a day's vacation on May 10th, but that Tabor would speak to Mr. Dan about the matter." Def. Motion Exh. 5 at 13.

*v. Internat. Bus. Machines Corp.,* 62 F.3d 237, 241 (8th Cir.1995).

In the Court's analysis, there is a genuine issue of material fact concerning the third element of plaintiff's prima facie case, that he complied with defendant's attendance policy. *Miller,* 116 F.3d at 345–46. Putting the telephone conversation plaintiff had with his supervisor on May 10, 1996, aside, the evidence is without dispute that after January 1996 defendant rigorously enforced its rule that no employee would be allowed to call in less than 24 hours before work time and be allowed to use a vacation day to avoid the assessment of absentee points. In fact, after January 1996 no other employee was granted vacation time under such circumstances. The application of the rule in plaintiff's case was determined by the labor arbitrator to be reasonable and not discriminatory. However, the labor arbitrator's finding aside, if plaintiff's supervisor granted his request for vacation time in the telephone conversation of May 10, 1996, then a factfinder might find that plaintiff complied with the defendant's attendance policy.

■ However, plaintiff has failed to show the existence of substantial evidence of the fourth element of his prima facie case. In the circumstances of plaintiff's case, he must show that similarly situated white employees were treated more favorably than he was in the application of the attendance policy after January 1996. *Barge,* 87 F.3d at 259. In this regard, plaintiff argues that five employees were allowed to call in less than 24 hours before their work time and receive vacation time off to avoid the assessment of absentee points. However, three of the five were African Americans; an inference of racial discrimination cannot be made from that fact. *Wilson,* 62 F.3d at 241. Further, after January 1996, when the more rigorous application of the policy was in effect, no other employee, white or black, was allowed to call in less than 24 hours before work time and avoid absentee points by getting vacation time. The circumstances of the two white employees who called in and received the vacation time before 1996 were substantially different than plaintiff's circumstances after January 1996 because of the change in defendant's

application of the policy. *Jones v. Frank,* 973 F.2d 673, 676 (8th Cir.1992).

■ In support of its motion for summary judgment, defendant proffered substantial evidence that it suspended and then discharged plaintiff in the application of its objective employee attendance policy. Such is a legitimate, non-discriminatory reason for defendant's actions. *Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1106 (8th Cir.1998).

Plaintiff's assertions of pretext are legally insufficient to satisfy his burden of proffering admissible evidence which indicates that defendant acted with intentional racial animus. *Id.; Ryther v.. KARE 11,* 108 F.3d 832, 837–38 n. 4 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997). The evidence about the five employees who were allowed to call in within 24 hours of work time to receive vacation time to avoid the absentee points has been dealt with above. Such evidence does not indicate a racially discriminatory motivation.

Plaintiff contends that the points assessed against him for his April 12 and May 10, 1996 absences were unfair and unreasonable, because his absenteeism did not cause any injury or damage to defendant (because, due to the number of employees in plaintiff's department, plaintiff's work would still be done in his absence), because he received no negative comments from his supervisor about the quality of his work performance or lack thereof, and because he would testify that his supervisor told him in the May 10 conversation that he could take the vacation time. Even assuming that defendant granted and later rescinded approval for taking vacation time off, to plaintiff's detriment, plaintiff has shown no substantial evidence, by any of these asserted facts, that allows the inference that defendant acted out of racial animus. These arguments, which merely dispute the quality of the business judgment exercised by defendant in its suspension and termination of him, do not in the circumstances of this case indicate that defendant acted toward plaintiff with racial animus. Absent evidence of racial animus, it is irrelevant that defendant may have acted incorrectly or with bad business judgment. *Rose–Maston,* 133

F.3d 1104, 1107; *Bradford v. Norfolk Southern Corp.*, 54 F.3d 1412, 1421 (8th Cir.1995).

Plaintiff argues that defendant did not give him the opportunity to rectify his situation in the same manner it gave his white co-workers. Other than the evidence recounted above, no substantial, relevant evidence of disparate treatment has been proffered by plaintiff.

■ Plaintiff asserts in his affidavit that during his employment with defendant he has received racially discriminatory treatment and harassment from management and his co-workers; defendant's management of plaintiff's department "constantly provoked" him on account of his race; plaintiff was denied various promotions; defendant gave plaintiff unjustified attendance violations; and he was forced to stay in the apprentice pool for 17 years. Such are conclusory statements which do not fulfill his obligation, when opposing a motion for summary judgment, to proffer specific, admissible evidence on the issue(s) contested. *Rose–Maston*, at 1107.

Plaintiff's rebuttal of defendant's showing of a legitimate non-discriminatory reason for its actions, and all of the substantial evidence proffered by the partis, is legally insufficient to support a finding of racial discrimination. *Miller v. Citizens Security Group, Inc.*, 116 F.3d 343, 347 (8th Cir.1997); *Price v. S–B Power Tool*, 75 F.3d 362, 366 (8th Cir.) *cert. denied*, —— U.S. ——, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996); *Wilson v. Internat. Bus. Machines Corp.*, 62 F.3d 237, 241 (8th Cir. 1995).

For these reasons, there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law. The motion of defendant for summary judgment will be sustained. The action is dismissed with prejudice. An appropriate order is issued herewith.