**Raymon HAMAKER, Appellant,**

v.

**Wanda J. IVY; Patricia May; Donna Schinz; Teresa Ables; Lionel Johnson; John Ables, Appellees.**

No. 94–2132.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1994.

Decided March 13, 1995.

Rehearing Denied April 13, 1995.

Robert Depper, Jr., El Dorado, AR, argued for appellant.

Counsel who presented argument on behalf of the appellee was Ralph C. Ohm, Hot Springs, AR, argued for appellees (David White, on the brief).

Before MAGILL and BEAM, Circuit Judges, and SHANAHAN,* District Judge.

MAGILL, Circuit Judge.

Raymon Hamaker appeals the district court's [1] grant of judgment as a matter of law to the defendants on his tort of outrage claim. Because we find that the evidence presented was not sufficient for a reasonable jury to find for Hamaker on his outrage claim, we affirm.

## I. BACKGROUND

Raymon Hamaker, who has an I.Q. of between 75 and 100 and a speech impediment, was in the habit of spending his days "hanging around" the Calhoun County courthouse. The courthouse is a focal point of the town of Hampton, Arkansas, population 1600. Over time, Hamaker became acquainted with the denizens of the courthouse, including the county sheriff, his deputy, the municipal court clerk, and three women who work in the county tax collector's office.

The friendly atmosphere around the courthouse was marred when Teresa Ables, one of the tax collector's staff, discovered that Hamaker had told various townspeople that he was going to pay her $100 to have sex with him. Ables, a married woman, remonstrated with Hamaker about the rumors he was spreading, but he refused to discuss the matter and later sent her flowers. Ables formed a plan to put a stop to Hamaker's rumor-mongering. She and her friends, including Wanda Ivy, municipal court clerk, obtained and completed an invalid arrest warrant for Hamaker, charging him with "sexual harassment." On February 4, 1992, Lionel Johnson, deputy sheriff, delivered the warrant to Hamaker outside the courthouse at 7:30 a.m.,

---

\* THE HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

telling Hamaker that if he did not stop bothering Ables, "the next one will be for real." Upset, Hamaker immediately went into the courthouse and showed the warrant to the sheriff, who had not been in on the plan, and who told him to show the warrant to the "witnesses" listed. In the next half-hour, Hamaker took the warrant to one of the "witnesses" and to two different friends, all of whom told him that it was invalid.

At 9 a.m., when the local clinic opened, Hamaker saw a doctor, whom he told that he was upset because he had received a fake arrest warrant. He had an increased heart rate and blood pressure, and the doctor gave him a sedative. He returned on February 7 because he was having trouble sleeping, which he ascribed to the receipt of the warrant. Hamaker, however, saw doctors for various ailments unrelated to the warrant twenty-nine times between February 4, 1992, and May 8, 1993.

As a result of this incident, the county sheriff placed the other defendants, except Ivy, who does not report to him, on probation for six months.

Hamaker then brought three claims against defendants in district court: a federal claim of unlawful arrest under § 1983, a state law claim of malicious prosecution, and a state law claim of outrage. After the presentation of evidence, the court granted defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 on the claims of malicious prosecution and outrage. The § 1983 claim went to the jury, which returned a verdict for defendants. Hamaker now appeals only the judgment on the state tort claim of outrage.[2]

## II. DISCUSSION

■ In reviewing a motion for judgment as a matter of law, we apply the same standard as the district court. *Swanson v. White Consol. Indus., Inc.*, 30 F.3d 971, 973 (8th Cir.1994). We resolve all factual issues in favor of the nonmoving party, and review the district court's determination of Arkansas

law de novo. *Id.* If reasonable jurors might differ as to the result, we reverse the district court's grant of the motion. *Id.*

The Arkansas courts take a very narrow view of claims for the tort of outrage. *See Ross v. Patterson*, 307 Ark. 68, 817 S.W.2d 418, 420 (1991). The courts have crafted a four-part test for a prima facie case of outrage: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Hollingsworth v. First Nat'l Bank*, 311 Ark. 637, 846 S.W.2d 176, 178 (1993) (internal quotations omitted). Elements (1) and (3) are met in this case; a jury could certainly find that defendants intended to cause some measure of emotional distress to Hamaker, and that they did cause some distress. The issues that remain before us are whether a reasonable jury might find that the defendants' conduct was extreme and outrageous, and whether a reasonable jury might find that the distress caused was so severe that no reasonable person could be expected to endure it.

### A. Extreme and Outrageous Conduct

■ The second element of the prima facie case is defined as "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Tandy Corp. v. Bone*, 283 Ark. 399, 678 S.W.2d 312, 314 (1984) (quoting *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980)). The conduct must be *both* extreme *and* outrageous. *Id.* The tort is not intended to "open the doors of the courts to every slight insult or indignity one must endure in life." *Hess v. Treece*, 286 Ark. 434, 693 S.W.2d 792, 796 (1985), *cert. denied*, 475 U.S. 1036, 106 S.Ct. 1245, 89 L.Ed.2d 354 (1986).

---

2. The tort of outrage under Arkansas law is very similar if not identical to the tort of intentional

infliction of emotional distress.

■ Factors that bear on the determination of whether conduct is extreme and outrageous include: the conduct at issue; the period of time over which the conduct took place; the relation between plaintiff and defendant, *see Hess*, 286 Ark. 434, 693 S.W.2d at 795–96; and defendant's knowledge that plaintiff is peculiarly susceptible to emotional distress by reason of some physical or mental peculiarity, *see Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683, 686 (1991).

■ The conduct of Ables and her cohorts does not reach Arkansas's exacting standard for extreme and outrageous conduct: It consisted of a rather nasty, but not terribly unusual or shocking, practical joke that cannot be described by any reasonable person as going "beyond all bounds of decency." The period of time over which the conduct directly caused distress was brief: Hamaker discovered that the warrant was false within one-half hour. *See Hess*, 286 Ark. 434, 693 S.W.2d at 794 (a two-year period of unwarranted surveillance and complaints against a police officer by city director extreme and outrageous); *Tandy*, 283 Ark. 399, 678 S.W.2d at 315 (a nearly day-long interrogation, with no permission to take medication, of employee known to be on medication for emotional instability extreme and outrageous). Although defendants knew that Hamaker is of below-average intelligence, there is no evidence that he is of peculiar emotional sensitivity. His low intelligence level may have made him more likely to believe that the warrant was valid, and thus may have made the trick more likely to succeed, but it does not, without more, make him more vulnerable to emotional distress and does not contribute to a showing of extreme and outrageous conduct.

■ The only factor that may militate toward a finding that the conduct was extreme and outrageous is that defendants are officials of the county government. In *Hess v. Treece*, the court found that the city director, who had in various ways harassed a police officer for two years, did not have immunity from a claim of outrage, and stated that

the jury could have found that Hess' conduct became even more outrageous after he took office as City Director ... thus acquiring a position of greater influence, if not actual authority, over city employees. The fact that Mark Treece happened to be a city employee should not deprive him of protection from outrageous conduct; nor should the fact that Bob Hess happened to be a City Director relieve him of responsibility for his actions.

286 Ark. 434, 693 S.W.2d at 796. Hamaker, however, was not an employee of the county, nor did defendants have any influence or authority over him beyond that they have over any citizen. In general, official misconduct under color of authority is a claim properly brought under § 1983, not under tort of outrage. Hamaker brought a § 1983 suit in which a jury found for defendants, and he cannot circumvent that finding by arguing that conduct that is otherwise not extreme and outrageous becomes extreme and outrageous only because the actors were county officials. A reasonable jury could not find that the first element of the prima facie case was met.

## B. Emotional Distress

■ Under the fourth element of the prima facie case, Hamaker must show that he suffered from emotional distress "so severe that no reasonable person could be expected to endure it." *Hollingsworth*, 311 Ark. 637, 846 S.W.2d at 178. Hamaker and his witnesses testified that he was red-faced and angry, that immediately after the incident he had an increased heart rate and blood pressure, and that four days later, he had some trouble sleeping. These are the common symptoms of anger, frequently endured by reasonable people, and do not rise to the level required to make a prima facie case of outrage. *See Givens v. Hixon*, 275 Ark. 370, 631 S.W.2d 263, 264 (1982) (summary judgment for defendant on a claim of outrage upheld, despite plaintiff's testimony that, after the incident giving rise to the claim, he was depressed, could not sleep or eat, lost weight, and entered a hospital a month later for a heart condition).

## III. CONCLUSION

Because no reasonable jury could find that defendants' conduct was extreme and outrageous or that Hamaker suffered emotional distress so severe that no reasonable person could endure it, we affirm the district court's judgment as a matter of law in favor of defendants.