United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3710

_____

Joe Earl Manning, Jr.,                              *
                                                    *
             Plaintiff/Appellant,                   *
                                                    *
Tomi Foust, Constance A. Pritchett,                 *
                                                    *
             Plaintiffs,                            *
                                                    *
Gerald M. Elliott,                                  *    Appeals from the United States
                                                    *    District Court for the
             Plaintiff/Appellant,                   *    Eastern District of Arkansas.
                                                    *
Cheryl V. Miller, Becky C. Smith,                   *
Deborah D. Williams,                                *
                                                    *
             Plaintiffs,                            *
                                                    *
      v.                                            *
                                                    *
Metropolitan Life Insurance                         *
Company, Inc.,                                      *
                                                    *
             Defendant/Appellee.                    *

_____

No. 96-3711

_____

| | |
|---|---|
| Joe Earl Manning, Jr., | * |
| | * |
| Plaintiff, | * |
| | * |
| Tomi Foust, Constance A. Pritchett, | * |
| | * |
| Plaintiffs/Appellees, | * |
| | * |
| Gerald M. Elliott, | * |
| | * |
| Plaintiff, | * |
| | * |
| Cheryl V. Miller, Becky C. Smith, | * |
| Deborah D. Williams, | * |
| | * |
| Plaintiffs/Appellees, | * |
| | * |
| v. | * |
| | * |
| Metropolitan Life Insurance | * |
| Company, Inc., | * |
| | * |
| Defendant/Appellant. | * |

_____

No. 96-3779

_____

| | |
|---|---|
| Joe Earl Manning, Jr., | * |
| | * |
| Plaintiff, | * |

-2-

Tomi Foust, Constance A. Pritchett,     *

       Plaintiffs/Appellants,     *

Gerald M. Elliott,     *

       Plaintiff,     *

Cheryl V. Miller, Becky C. Smith,     *
Deborah D. Williams,     *

       Plaintiffs/Appellants,     *

    v.     *

Metropolitan Life Insurance     *
Company, Inc.,     *

       Defendant/Appellee.     *

_____

Submitted: September 8, 1997

Filed: October 10, 1997
_____

Before FAGG, LAY, and WOLLMAN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Plaintiffs Joe Earl Manning, Jr. and Gerald Elliott appeal from the district court's grant of judgment as a matter of law (JAML) on their tort of outrage claims. Plaintiffs Deborah Williams, Cheryl Miller, Becky Smith, and Tomi Foust appeal from the

district court's grant of JAML on their claims of retaliation under Title VII. Defendant Metropolitan Life Insurance Company (Metropolitan Life) cross-appeals from the district court's denial of JAML on the outrage claims of Williams, Miller, Smith, Foust, and Constance Pritchett. Metropolitan Life also cross-appeals from the denial of JAML on Pritchett's retaliation claim. We affirm in part, reverse in part, and remand for a trial on the issue of damages only on Pritchett's outrage claim.

## I.

This case has its genesis in the West Memphis, Arkansas, office of Metropolitan Life, where the plaintiffs were employed prior to its closing in May of 1994. The West Memphis office was not an agreeable place to work. Most of the conduct that resulted in the plaintiffs' allegations was connected, at some level, to an adulterous affair that was alleged to have occurred between West Memphis branch manager Denise Mitchell and account representative and executive trainee candidate Charles Craig.

The sexual relationship between Mitchell and Craig pervaded the office environment. Craig, whom Mitchell referred to as "like an assistant manager," and who described himself as the "dominant male" of the office, flaunted his intimate influence with Mitchell over his fellow employees. Craig boasted openly and explicitly of sexual acts with Mitchell and of the preferential treatment that his relationship with Mitchell afforded him. Craig described his own sexual prowess in graphic terms, detailing his performance of oral sex upon Mitchell, and describing and fondling his genitals in front of female employees on an almost daily basis. He would often place his crotch in front of a seated female employee and demand that she address his penis, which he referred to as "Harvey." He also engaged in speculation about the sexual habits of others, such as accusing female account representatives of sleeping with their clients in order to secure business.

Additionally, Craig made crude, intimidating attempts to utilize his influence with Mitchell to solicit sexual favors from account representatives, who depended on Mitchell's support in order to satisfy Metropolitan Life's strict production requirements, and from other female employees under Mitchell's supervision. Craig made a frequent practice of approaching Smith, for example, to inform her that he would buy her lunch in exchange for oral sex. On one occasion, he told Pritchett, who was pregnant at the time, that he knew that she would like him to touch her breasts. Craig also informed at least one of the plaintiffs that if she would have sex with him he would intervene on her behalf with Mitchell and prevent what he said was her impending termination for low production.

Plaintiffs' complaints to Mitchell protesting Craig's conduct were initially met with indifference and eventually returned with hostility and threats of termination. Describing himself as a former CIA mercenary and assassin, Craig seems to have taken pleasure from his veiled suggestions that he would have Pritchett and Smith, among others, killed for complaining about Mitchell's and Craig's behavior. Mitchell and Craig openly encouraged the perception that Craig had authority over the other employees, that his activities and behavior were not to be questioned, and that he was being groomed for a position in management. Plaintiffs' complaints were similarly dismissed without investigation by other Metropolitan Life supervisory personnel, including agency vice president Danny Gleason.

The plaintiffs also testified to having been encouraged by their supervisors to engage in various illegal or unethical practices, including the writing of policies in a state for which the agent was not licensed, the forgery of policyholders' signatures, and the targeting of elderly policyholders to convince them to use the accrued cash value in their existing policies with Metropolitan Life to purchase new and more substantial policies, an illegal practice known as "churning."

Eventually, persistent complaints by Pritchett, in particular, to the New York headquarters of Metropolitan Life produced an investigation. As a result, Mitchell was "repositioned," as Gleason termed it, as an account representative in the Jonesboro office of Metropolitan Life. Rather than being terminated, Craig was transferred to a similar office in Olive Branch, Mississippi (for whatever reason, Craig did not report for work at this new location, although it appears to be only some twenty-five to thirty miles distant from West Memphis).

The plaintiffs ultimately brought suit, alleging that Metropolitan Life's response to their complaints constituted retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). The plaintiffs further alleged that by tolerating various forms of sexual harassment and other clearly inappropriate behavior by its supervisors and employees, Metropolitan Life was guilty of the tort of outrage under Arkansas law.[1]

At the close of the plaintiffs' case, Metropolitan Life moved for JAML on all claims of retaliation. The district court granted JAML on all but one of the retaliation claims, holding that the requisite adverse employment action had not been shown. Pritchett's retaliation claim was allowed to proceed. Metropolitan Life then moved for JAML on all claims of outrage. The district court denied the motion on the outrage claims of Pritchett, Williams, Miller, Smith, and Foust, and reserved a ruling on the claims of Manning and Elliott.

---

[1]The district court held that the plaintiffs' Title VII sexual harassment claims were barred by the applicable statute of limitations, a ruling that plaintiffs do not challenge on appeal. The plaintiffs also appear to have alleged retaliation in violation of Title VII, 42 U.S.C. § 1981(a). Although Section 1981 has been held to encompass allegations of retaliatory conduct in a racial discrimination context, claims of gender or sex discrimination are not cognizable. See DeGraffenreid v. General Motors Assembly Div., St. Louis, 558 F.2d 480, 486 n.2 (8th Cir. 1977).

After the conclusion of all evidence, Metropolitan renewed its motions for JAML on the plaintiffs' outrage claims and on Pritchett's retaliation claim. The district court again took under advisement the motion for JAML on the outrage claims of Manning and Elliott, and denied the other motions. After the jury returned a verdict for each plaintiff on the claims of outrage and for Pritchett on her retaliation claim, the district court granted JAML on the outrage claims of Manning and Elliott, and entered judgment on the remaining claims.

## II.

We conduct a de novo review of a district court's rulings on motions for JAML, applying the same standard employed by the district court. See Feltmann v. Sieben, 108 F.3d 970, 974 (8th Cir. 1997). We resolve all factual conflicts in favor of the nonmoving party, giving that party the benefit of all reasonable inferences and assuming as true all facts favoring that party which the evidence tended to prove. See Gathright v. St. Louis Teacher's Credit Union, 97 F.3d 266, 267 (8th Cir. 1996). We will affirm a grant of JAML where the nonmoving party has presented insufficient evidence to support a jury verdict in his favor. See Harvey v. Wal-Mart Stores, Inc., 33 F.3d 969, 970 (8th Cir. 1994). Similarly, we will affirm the denial of a motion for JAML if a reasonable jury could differ as to the conclusions that could be drawn. See Gathright, 97 F.3d at 268.

The tort of outrage under Arkansas law is essentially that of intentional infliction of emotional distress. See Hamaker v. Ivy, 51 F.3d 108, 110 n.2 (8th Cir. 1995). Four elements must be proved to establish such a claim: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected

to endure it.  See Doe v. Wright, 82 F.3d 265, 269 (8th Cir. 1996) (citing Deitsch v. Tillery, 833 S.W.2d 760, 762 (Ark. 1992)).

We have recognized that the Arkansas courts take a very narrow view of claims of outrage.  See Freeman v. Bechtel Const. Co., 87 F.3d 1029, 1031 (8th Cir. 1996). The tort is clearly not intended to provide legal redress for every slight insult or indignity that one must endure.  See Hamaker, 51 F.3d at 110.  Review of outrage claims in employment situations has been particularly strict, as "an employer must be given a certain amount of latitude in dealing with employees."  Freeman, 87 F.3d at 1031 (quoting Sterling v. Upjohn Healthcare Servs., Inc., 772 S.W.2d 329, 330 (Ark. 1989)).

The Supreme Court of Arkansas has consistently held the plaintiff to a high burden of proof in a tort of outrage claim in an employment situation.  In Hollomon v. Keadle, the court seemed to raise the threshold of proof even higher, however, by holding that an employee who did not demonstrate that her employer was made aware that she was not a person of ordinary temperament or that she was peculiarly susceptible to emotional distress by reason of some physical or mental condition did not establish a claim of outrage.  931 S.W.2d 413, 415 (Ark. 1996).  In so doing, the court explicitly relied on its statement in Tandy Corp. v. Bone, 678 S.W.2d 312 (Ark. 1984), that "[w]e emphasize that the notice to the employer of Bone's condition is the only basis for a jury question of extreme outrage."  Hollomon, 931 S.W.2d at 415 (quoting Tandy, 678 S.W.2d at 317).[2]

_____

[2]Removed from its context in Tandy, this statement might be misconstrued.  The Tandy court proceeded to hold: "Whether Bone's testimony was credible, whether he had intentionally lied to his employer, whether his employer was reasonable in denying him his medication, and whether, considering all the circumstances, the employer was guilty of outrageous conduct that proximately caused emotional distress to Bone were all questions for the jury."  Tandy, 678 S.W.2d at 317 (emphasis added).

Metropolitan Life argues that <u>Hollomon</u> stands for the proposition that an employee in Arkansas can never state a claim of outrage against her employer unless she has first established that the employer was placed on notice that the employee was not a person of ordinary temperament or was peculiarly susceptible to emotional distress. Such a holding, however, would not be in accord with the Restatement (Second) of Torts § 46 (1965), upon which the <u>Hollomon</u> court relied, which regards such a showing as merely one factor that might be considered in an examination of whether alleged conduct is of a sufficiently extreme and outrageous character to support liability:

> The extreme and outrageous character of the conduct <u>may arise</u> from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.

<u>Id.</u> at cmt. f (emphasis added); <u>see also</u> <u>Ingram v. Pirelli Cable Corp.</u>, 747 S.W.2d 103, 106 (Ark. 1988).

We have found no other Arkansas case, in the employment context or otherwise, which suggests that a failure to demonstrate an alleged tortfeasor's knowledge of a victim's fragile temperament or peculiar susceptibility to emotional distress will, by itself, defeat an outrage claim as a matter of law. To the contrary, in the Arkansas Supreme Court's most recent pronouncement on outrage, only the traditional elements of the tort are set forth, and no reference is made to the purported requirement of employer notice of peculiar susceptibility. <u>See</u> <u>Angle v. Alexander</u>, 945 S.W.2d 933, 936-37 (Ark. 1997).

-10-

We believe that the Arkansas courts will continue to adhere to the traditional elements of outrage and that notice of peculiar susceptibility to emotional distress will merely be one factor given special emphasis when an aggrieved employee asserts an outrage claim, as the Restatement of Torts and a reading of Arkansas case law prior to Hollomon suggest. See Wright, 82 F.3d at 269; Hamaker, 51 F.3d at 111; Crenshaw v. Georgia-Pacific Corp., 915 F. Supp. 93, 98 (W.D. Ark. 1995); Smith v. American Greetings Corp., 804 S.W.2d 683, 686 (Ark. 1991). We do not believe, for example, that the Supreme Court of Arkansas would set aside a tort of outrage verdict in favor of an employee whose employer repeatedly fondled her and made intimidating demands for sex, merely because there was no showing that the employer was made aware that the employee was peculiarly susceptible to the severe emotional distress that such outrageous conduct is substantially certain to cause. See Hale v. Ladd, 826 S.W.2d 244 (Ark. 1992). Rather, we are confident that the court would hold that the right to be free from conduct of this sort extends to every person and not just to those known to possess temperaments that are peculiarly fragile.

We turn, then, to the substance of these appeals. We are in agreement with the district court that JAML was not appropriate on the outrage claims of Williams, Miller, Smith, Foust, and Pritchett.[3] Each of these women was targeted by Craig and subjected to daily descriptions of his body parts, explicit updates on his sexual activity, and crude propositions made under the threat of adverse consequences or the promise of special favors. Each also testified that Craig's ongoing public affair with Mitchell rendered their protests fruitless. Complaints by the plaintiffs to their regional supervisors produced responses ranging from passivity to subtle hostility. All of these plaintiffs,

---

[3]The jury made the following damage awards on these plaintiffs' outrage claims: Williams ($1,500 compensatory/2,000 punitive); Miller ($10,500/19,500); Smith ($2,500/4,500); and Foust ($5,000/8,500). Pritchett was awarded $50,000 in compensatory and $225,000 in punitive damages as compensation for her outrage and retaliation claims.

moreover, described the extreme distress and accompanying symptoms that resulted from the actions of Craig and Mitchell and the indifference of Metropolitan Life. See Angle, 945 S.W.2d at 937 (citing *Prosser and Keeton on Torts*, § 12 (5th ed. 1984)) (if enormity of offending conduct itself carries conviction there has been severe mental distress, physical harm not required to be shown). We believe that a reasonable jury could find this conduct to have constituted the tort of outrage under Arkansas law.[4] We therefore affirm the district court's denial of JAML on the outrage claims of Williams, Miller, Smith, Foust, and Pritchett.

We also agree with the district court that Manning and Elliott presented insufficient evidence to support the jury verdicts in their favor on their outrage claims.[5] Manning and Elliott were no more than occasional spectators to the sort of abuse by Craig that the other plaintiffs were forced to endure. Manning's chief complaint was that he felt pressured to permit Mitchell and Craig access to his house to conduct their adulterous affair, although he apparently never expressed to them his discomfort with this situation until he eventually and indirectly did so by turning down the furnace. Elliott claims that a psychiatric vulnerability made his overhearing of sexual comments by Craig unbearable, although Craig apparently honored Elliott's request to stop making such comments in Elliott's presence. Exposure to abrasive profanity alone is not sufficient to state an outrage cause of action. See Tandy, 678 S.W.2d at 315.

---

[4] Regarding plaintiffs' allegations that they were encouraged by their superiors to participate in illegal and unethical business practices such as forgery and churning, we note that such allegations alone are not sufficient to state a claim of outrage under Arkansas law. See Puckett v. Cook, 864 F.2d 619, 622 (8th Cir. 1989); Sterling Drug, Inc. v. Oxford, 743 S.W.2d 380, 382-83 (Ark. 1988). Such practices, however, could very well have contributed to the plaintiffs' emotional distress.

[5] The jury awarded Manning $5,000 in compensatory and $25,000 in punitive damages. Elliott was awarded $13,000 in compensatory and $25,000 in punitive damages.

Accordingly, we affirm the district court's grant of JAML on Manning's and Elliott's outrage claims.

## III.

As indicated above, the district court granted judgment as a matter of law on all but Pritchett's retaliation claim, holding that a subsequent adverse employment action had not been demonstrated by Williams, Miller, Smith, and Foust.

To prevail on a retaliation claim brought under Title VII, 42 U.S.C. § 2000e-3(a), an employee must show that (1) she filed a charge of discrimination; (2) the employer subsequently took adverse employment action against her; and (3) the adverse action was causally linked to the filing of the charge of discrimination. See Cram v. Lamson & Sessions, Co., 49 F.3d 466, 474 (8th Cir. 1995). Once this prima facie showing is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. See Jackson v. Delta Special Sch. Dist. No. 2, 86 F.3d 1489, 1494 (8th Cir. 1996). If the employer meets that burden, the presumption of retaliation disappears. See id.

The retaliation provision of 42 U.S.C. § 2000e-3(a) does not itself contain language requiring a materially adverse employment action in order to state a claim. This requirement is inferred from the basic prohibition of employment discrimination set forth in 42 U.S.C. § 2000e-2(a)(1)-(2). See McDonnell v. Cisneros, 84 F.3d 256, 258-59 (7th Cir. 1996).

Although actions short of termination may constitute an adverse employment action within the meaning of the statute, "not everything that makes an employee unhappy is an actionable adverse action." Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). We have held that a reasonable jury could conclude that negative references to potential employers constituted sufficient adverse action to state

-14-

a retaliation claim. Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997). We have also recently held that the loss of status and prestige that accompanied replacement of an income maintenance supervisor's staff, when her salary and position remained the same, did not constitute a sufficient adverse employment action. Ledergerber v. Stangler, No. 96-2395, 1997 WL545970 (8th Cir. Sept. 8, 1997); see also Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (changes in duties or working conditions that cause no materially significant disadvantage insufficient to establish adverse employment action).

Although the West Memphis office eventually closed as part of a larger downsizing at Metropolitan Life, Williams, Miller, Smith, and Foust do not allege the loss of their employment to have constituted retaliation for their complaints. Instead, these plaintiffs generally contend that the hostility and personal animus directed toward them by Metropolitan Life supervisors collectively constituted an adverse employment action. Williams, additionally, made vague allegations that her disability benefits were improperly handled as punishment for speaking out.

Absent evidence of some more tangible change in duties or working conditions that constituted a material employment disadvantage, we must agree with the district court that Williams, Miller, Smith, and Foust did not present evidence sufficient to demonstrate any adverse employment action that constitutes the sort of ultimate employment decision intended to be actionable under Title VII. See Ledergerber, 1997 WL545970 at *2; Montandon, 116 F.3d at 359. We therefore affirm the grant of JAML on their retaliation claims.

The district court denied a motion for JAML on Pritchett's retaliation claim. Pritchett contended that she was retaliated against for her complaints in the form of disrespect and ostracization by her supervisors and as a result of the untimeliness and the manner in which the West Memphis office was closed. Although the hostility directed toward Pritchett was of greater intensity than that directed toward the other

plaintiffs, we conclude that it did not rise to the level of an adverse employment action. See id.; Ledergerber, 1997 WL545970 at *2. Regarding the manner in which the West Memphis office was closed, Pritchett cannot establish that she was treated any differently from any other Metropolitan employee who was affected. Pritchett was transferred to Jonesboro, the Metropolitan Life office closest in proximity to West Memphis, and was eventually terminated for lack of production. Significantly, she does not allege that she was discharged in retaliation for her complaint. Accordingly, the district court should have granted Metropolitan Life's motion for JAML on Pritchett's retaliation claim.

## IV.

Although the jury was instructed to make separate findings of liability on Pritchett's claims of outrage and retaliation, the verdict form was not structured to allow for a separate award on each of these counts. As a result, the jury awarded a lump sum of $50,000 in compensatory and $225,000 in punitive damages. Because we are unable to determine how the jury intended to apportion the damages between the two claims, we must remand Pritchett's outrage claim for determination of an appropriate damage award.

The judgment is affirmed in part and reversed in part, and the case is remanded to the district court for trial on the issue of damages only on Pritchett's outrage claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-16-