Amelia DE JESUS, Plaintiff,

v.

John POTTER, Postmaster
General, Defendant.

No. CIV. 04–1388(JAF).

United States District Court,
D. Puerto Rico.

Oct. 26, 2005.

Adalina De–Jesus–Morales, Nora Vargas–Acosta, De Jesus, Hey & Vargas Law Office, San Juan, PR, for Plaintiff.

Katherine Gonzalez–Valentin, United States Attorney's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

FUSTE, Chief District Judge.

Plaintiff, Amelia de Jesús ("Plaintiff"), filed the present action against Defendant, John E. Potter, Jr., in his official capacity as Postmaster General of the United States of America, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 20003–17 (1994 & Supp.2005). *Docket Document No. 1.* Defendant moves for summary judgment, claiming that: (1) Plaintiff cannot establish that she was subject to an adverse employment action or treated less favorably than other similarly-situated employees; and (2) Defendant is able to rebut any inference of discrimination with legitimate, non-discriminatory reasons for its actions. *Docket Document No. 19.*

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from the parties' statements of facts. *Docket Document Nos. 18, 28.*

Plaintiff has been a United States Postal Service employee from May 1981 through the present date. Since 1993, Plaintiff has been the Transportation Contracts Manager of the New York Metro Area Distribution Networks Office ("DNO"), Carribean Branch office. Since 2000, Plaintiff's position has been classified as EAS Level 25. Plaintiff reports to Postal Service Headquarters in Washington D.C. and also to her supervisor, Stuart Gossoff, at the New York Metro Area ("NY Metro Area") in New York. She is the only female manager out of twelve DNO managers nationwide. She is one of three managers in the N.Y. Metro DNO.

In her capacity as Caribbean Branch Manager, Transportation Contracts, Plaintiff is responsible officially for contracts work and also, because she is the sole manager in the Carribean Branch, for day-to-day networks work. She has two counterparts in the New York Branch of the N.Y. Metro Area: Mark Stein, who focuses only on networks and is officially the networks supervisor for the Caribbean Branch, and Héctor Martínez, who is involved only with contracts.

In April 2003, the Postal Service instituted a realignment plan ("the Realignment Plan"), conducting a nationwide DNO review and creating a new position, Senior Networks Operations Analyst. Four of the new positions were designated as EAS level 23, and fourteen positions were designated as EAS level 21. Employees ranked lower than EAS 21 were instructed to apply to the new positions.

According to Plaintiff, the New York Metro DNO Manager announced that none of the available EAS level 21 or 23 positions would be assigned to Caribbean Branch office employees. Additionally, Plaintiff was not invited to participate in the selection and recruitment process for the newly-created positions. Antongiorgi applied for one of the new positions and was rejected.

Prior to April 2003, as Caribbean Branch manager, Plaintiff supervised three employees: Félix Torres, Networks Specialist (EAS Level 19); Jorge Antongiorgi, Networks Specialist (EAS Level 19); and Concepción González, Contract Specialist (EAS Level 19). The April 2003 realignment had the effect of placing Torres and Antongiorgi outside of Plaintiff's direct supervision and, instead, under the supervision of Danny Farino, Networks Analyst (EAS Level 23) in the New York Metro DNO. As a result, only González still reported to Plaintiff, even though all three employees worked in the Caribbean Branch in Puerto Rico and Plaintiff is the manager of the facility.[1]

Plaintiff alleges that the Realignment Plan's effects, with regards to Torres and Antongiorgi, were motivated by an intent to undermine her work and the work of the Caribbean Branch office.

Ultimately, only some of the available vacancies were filled at the New York Metro DNO. Four positions remained unfilled. None of the positions were filled by employees of Hispanic origin or by employees from the Caribbean Branch office in Puerto Rico.

---

1. Torres retired from the Postal Service in early 2003, and his replacement worked directly under Plaintiff's supervision.

On May 3, 2004, Plaintiff filed the present complaint. *Docket Document No. 1.* On August 12, 2005, Defendant moved for summary judgment. *Docket Document No. 19.* Plaintiff filed an opposition on September 30, 2005. *Docket Document No. 28.*

## II.

### *Applicable Legal Standards*

#### A. *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact, though the burden "may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. *Id.* at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella*, 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)).

#### B. *The McDonnell Douglas Analytical Framework*

Title VII of the Civil Rights Act of 1964 provides that it shall be illegal to discriminate against any individual based on "[her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).

In the absence of direct evidence or a "smoking gun" demonstrating that the employer's bias against his employee's sex or race motivated his actions, the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), provides the legal framework with which to analyze the issue. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 420 (1st Cir.1996) (stating that "[a]bsent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove her case by resort to a burden-shifting framework."). The *McDonnell Douglas* framework requires that a plaintiff establish a prima-facie case by demonstrating that: (1) she was within a protected class; (2) she met the employer's legitimate performance expectations; (3) she experienced an adverse employment decision by her employer; and, in the context of a failure to hire or promote case, a member of a protected class must demonstrate that: (4) he or she was not selected for the coveted position; and (5) the employer filled the position by hiring

another individual with similar qualifications. *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir.2000); *Suarez v. Pueblo Int'l., Inc.,* 229 F.3d 49, 53 (1st Cir.2000); *see also Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 33 (1st Cir.2001). Once the plaintiff establishes a prima facie case, the presumption arises that the employer unlawfully discriminated against her. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 68–69 (1st Cir.2002); *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 478 (1st Cir.1993); *Straughn,* 250 F.3d at 33. The burden of production then shifts back to the employer-defendant who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir.2000).

If the employer meets this burden, the inference of unlawful discrimination is dispelled, and the burden shifts to the plaintiff to show that the employer's alleged justification is a mere pretext for discrimination. *Id.; Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 823 (1st Cir.1991); *Straughn,* 250 F.3d at 34. At this stage, the plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment action. *See Hazen Paper v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Mesnick,* 950 F.2d at 825; *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 54 (1st Cir.2000). Throughout this analysis, the plaintiff must prove that she would not have suffered the adverse employment action but for her membership in a protected class. *See Freeman v. Package Mach.,* 865 F.2d 1331, 1335 (1st Cir.1988).

## III.

### *Analysis*

In rebuttal to Defendant's averment that Plaintiff has failed to establish the presence of an adverse employment action—a necessary element of a prima facie discrimination claim—Plaintiff alleges that she suffered the following adverse employment actions: (1) despite her supervisor status, she was purposefully excluded from major managerial decisions that affected her work domain; (2) members of her staff were withdrawn from her authority; (3) members of her staff were denied promotions; (4) her supervisor stopped communicating directly with her after she complained of discrimination; and (5) her supervisor used derogatory language about employees of Puerto Rican origin. *Docket Document No. 28.* We consider each allegation in turn.

Plaintiff complains that she was not consulted during the April 2003 realignment, despite her responsibility for network operations that were directly affected by the changes. She further claims that the realignment undermined her authority by failing to grant promotions to her employees and by removing two employees from her direct supervision. *Id.* Plaintiff cites *Gu v. Boston Police Department* for the proposition that a decrease in her supervisory authority constitutes a cognizable adverse employment action. 312 F.3d 6 (1st Cir. 2002).

In *Gu,* the First Circuit found that two female plaintiffs met their prima facie burden by demonstrating that they were not hired despite having sufficient qualifications for available positions. 312 F.3d at 11–12. Plaintiff fails to argue, nor can we divine, how the holding in *Gu* is probative to the present case. Plaintiff does not allege that she was denied a promotion for which she was qualified and, as we discuss

below, she lacks standing to bring a claim on other employees' behalf.

■ An employment action need not bare pecuniary implications to be considered adverse. *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 24 (1st Cir.2002) ("[C]ourts have rejected any bright line rule that a transfer cannot qualify as an 'adverse employment action' unless it results in a diminution in salary or a loss of benefits."). In *Rodriguez v. Board of Education of Eastchester Union Free School District,* the Second Circuit found a female art teacher's transfer from junior high school to elementary school to be an adverse employment action, where the teacher possessed twenty years of middle school teaching experience and a doctoral degree with an emphasis on middle school art education. 620 F.2d 362, 366 (2d Cir. 1980). In *Collins v. Illinois,* the Seventh Circuit found adverse employment action when a plaintiff was transferred from her position as a library consultant, in which she enjoyed a private office, a telephone, printed business cards, and a professional database listing, to a newly created "reference unit" position, in which she worked at a receptionist-style desk and enjoyed none of the accouterments of her prior job. 830 F.2d 692, 703 (7th Cir.1987). The First Circuit has carefully distinguished *Rodriguez* and *Collins* from cases featuring "minor" and/or "temporary" changes in working conditions. *Marrero,* 304 F.3d at 24–25. Mindful of the distinction articulated in *Marrero,* we find that Plaintiff alleges only minor changes in her working conditions that do not constitute an adverse employment action.

### A. *Exclusion from Managerial Decision-making*

■ Plaintiff's complaint that she was not ·consulted regarding the realignment—an exclusion from one isolated managerial choice—is grossly insufficient to constitute a substantial change in working conditions, as it was certainly temporary (consisting of only one instance) and, compared to the fundamental and humiliating changes described in *Rodriguez* and *Collins,* exceedingly minor. The record clearly demonstrates that the Realignment Plan was instituted on a national scale, and involved considerations that were outside of Plaintiff's domain of responsibility. Plaintiff concedes that she was, in fact, consulted in June 2003, *Docket Document No. 26,* ¶ *52,* and voiced objections to the deliberation process later. *Id.,* ¶ *61.* While Plaintiff's wishes ultimately were not heeded, we do not find that her lack of influence in the deliberative process constitutes an adverse employment action.

### B. *Failure to Promote Other Employees*

■ Similarly, we do not find that Defendant's failure to grant a higher employment grade to two employees under Plaintiff's supervision constitutes an adverse employment action. Plaintiff puts forward no cases or argument to support such an attenuated allegation, and we are not inclined to construct an argument on her behalf. The failure to promote Torres and/or Antongiorgi, as it affects Plaintiff, is not a "demotion[ ], disadvantageous transfer[ ] or assignment[ ], refusal[ ] to promote, unwarranted negative job evaluation[ ], [or] toleration of harassment by other employees." *White v. N.H. Dep't of Corr.,* 221 F.3d 254, 262 (1st Cir.2000). Nothing in the record suggests that the failure to promote Torres and/or Antongiorgi directly affected Plaintiff's working conditions in any way that is cognizable as an adverse employment action for Title VII purposes. *Blackie v. Maine,* 75 F.3d 716, 725 (1st Cir.1996) ("Work places are rarely idyllic retreats, and the mere fact

that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.").

■ The vast majority of material contested facts contained in Plaintiff's fact statement are totally irrelevant to her working conditions, but rather involve Antongiorgi's application for an EAS Level 21 position. *Docket Document No. 26, ¶¶ 10–29.* Insofar as Plaintiff's claim rests on the allegation that Antongiorgi was unlawfully discriminated against during the promotion process, Plaintiff clearly lacks standing to bring a claim on Antongiorgi's behalf. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); *United States v. Students Challenging Reg. Agency Procedures,* 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (insisting upon a showing of personal injury "prevents the judicial process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders."); *United States v. AVX Corp.,* 962 F.2d 108, 114 (1st Cir.1992) ("A mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury.").

### C. *Loss of Authority*

■ Plaintiff's alleged loss of direct authority over Antongiorgi and Torres also fails to constitute an adverse employment action. Both before and after the Realignment, Plaintiff's formal job title was Manager, Transportation Contracts. Her authority over Torres and Antongiorgi, who were both networks employees, was based on the fact that she was the only Manager in the Caribbean Branch, and also because Antongiorgi performed some contract work. Plaintiff concedes that at all times relevant to this complaint, Mr. Stein, the networks manager in New York, was the official supervisor over all networks operations in the Caribbean Branch. *Docket Document No. 26, ¶ 11.* After the Realignment Plan's implementation, official supervision remained with Mr. Stein, and some oversight passed to Dan Farino (EAS Level 23) in New York, but Plaintiff concedes that she maintained her day-to-day control over Antongiorgi's work. *Id, ¶ 14.* Torres' retirement and his replacement by Noemi Carrión increased Plaintiff's official supervisory role, since Carrión worked in contracts. We find no facts suggesting that Plaintiff's official or unofficial work conditions changed adversely as a result of the Realignment Plan.

### D. *Hostile Treatment*

Plaintiff alleges that after she complained of discrimination in the Realignment Process, her supervisor Gussoff stopped direct communication with her. Plaintiff also alleges that Gussoff tolerated and even joined in making derogatory comments about Puerto Rican employees. Plaintiff puts these episodes forward as evidence of adverse employment actions that she suffered because of her protected status. *Docket Document No. 28.* Traditionally, such allegations are put forward as a hostile work environment claim, although Plaintiff does not specifically articulate a hostile work environment cause of action. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 20–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Put forward either as a hostile work environment claim or an adverse employment action, Plaintiff's allegations on how she was treated in the workplace are not actionable.

■ Regarding Plaintiff's allegation of severed contact with her supervisor, we

acknowledge that professional ostracism, when carried to an extreme, can comprise an adverse employment action. *Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 52, n. 12 (1st Cir.1999). However, to satisfy such a threshold, Plaintiff would have to establish that Gussoff "incited or encouraged coworkers to shun" her, and that she "suffered some material harm resulting from" her inability to consult with her colleagues on business matters. *Id.* (citing *Parkins v. Civil Constructors of Ill.,* 163 F.3d 1027, 1039 (7th Cir.1998); *Flannery v. Trans World Airlines, Inc.,* 160 F.3d 425, 428 (8th Cir.1998); *Manning v. Metro. Life Ins. Co.,* 127 F.3d 686, 693 (8th Cir.1997); *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 485 (7th Cir.1996)). Plaintiff makes no allegations suggesting either that Gussoff urged Plaintiff's colleagues to shun her, nor that she suffered professionally as a result of Gussoff's ostracization. The absence of such allegations is hardly surprising, as Gussoff did not work in the same workplace as Plaintiff and Plaintiff only mentions several isolated incidents in which Gussoff allegedly passed messages to Plaintiff through other employees, rather than communicate directly with her. *Docket Document No. 18, Attach. 6, pp. 175–180.* As the First Circuit found in *Marrero v. Goya of Puerto Rico, Inc.,* "the sort of 'intensified personal animus, hostility, disrespect, and ostracism' that [Plaintiff] alleged here 'fails to constitute a material employment disadvantage' sufficient to transform an ostensibly lateral transfer [or, in this case, the effects of the Realignment Plan] into an adverse employment action." 304 F.3d 7, 25 (1st Cir.2002) (quoting *Jones v. Fitzgerald,* 285 F.3d 705, 714 (8th Cir.2002); *Manning,* 127 F.3d at 693 (holding that evidence of "disrespect and ostracization by ... supervisors" did not establish an adverse employment action)).

■ Plaintiff puts forward several allegations of derogatory language: (1) Gussoff once referred to the Caribbean Branch employees (all Puerto Ricans) as "you people"; (2) Stein once made a comment concerning Networks functions suggesting that "mail was coming off of the banana boat"; (3) Postal Service employee John Westrick made a comment about whether the employees in Puerto Rico were like blind musician performers Ray Charles and José Feliciano. We are strained to find racially-offensive or discriminatory language in these alleged incidents. While in poor taste, Westrick's comment appears to be more directed toward the visually-impaired, rather than Hispanic women such as Plaintiff. We can infer absolutely no discriminatory intent in the use of the words "you people," which, as Plaintiff concedes, was directed at the employees of the Caribbean Branch, rather than at any particular protected class. *Docket Document No. 28, p. 23.* The use of the term "banana boat" is potentially pejorative, but in isolation does not provide sufficient grounds for remedy. *O'Rourke v. City of Providence,* 235 F.3d 713, 729 (" '[O]ffhand comments, and isolated incidents' are not sufficient to create actionable harassment; the hostile work environment standard must be kept 'sufficiently demanding to ensure that Title VII does not become a "general civility code." ' " (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998))).

In any case, Plaintiff puts forward the allegations of derogatory language as instances of adverse employment action and, under *Marrero,* the allegations do not suffice to sustain a prima facie claim. 304 F.3d at 25.

## IV.

### *Conclusion*

Plaintiff has failed to assert a prima facie case of Title VII discrimination. In accordance with the foregoing, we **GRANT** Defendant's motion for summary judgment. *Docket Document No. 19.* Plaintiff's Title VII claims are **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**